If it please the court, Julie Goldberg, appearing for appellant. I would like to address three issues. One is the second prong in the Mandel test. The other is the dismissal under 12b-1 and then the protected interest. So beginning with the Mandel test, we would concede that the government did select a legitimate reason. The problem becomes in the second prong. There is absolutely no facially connected statutory groans. This is a woman who was a homemaker, who has never belonged to any sort of group, political group. She's raised her kids. She's never held a job. Breyer. How do we review that, counsel? Goldberg. I'm sorry. How do we? Breyer. How do we possibly review that? Goldberg. Well, under Mandel, they said there was a two-part test. And so they said first they had to list a specific statute. In section, there has to be some sort of the counsel officer had to find some sort of factual or facially connected reason to in fact cite that statute. There is nothing in the record whatsoever. And given that in our pleadings we specifically discussed that this was a homemaker, we discussed this as a woman who has never held a job. She didn't belong to any sort of group. She has had no activity in any sort of terrorist organization. And in addition to the ---- But these are all denials. These are all denials of fact. How do we review that? Well, I think that the district ---- If we thought that, for example, that the consular officer had relied on classified information, we would have to conduct the in-camera proceedings in the district court to review whether we agreed with the officer? I mean, I would say there needs to be something, just an ounce of something, whether that be an in-camera review or ---- But the government needs to give an inkling of something, even if it is this officer ---- I mean, like, for example, if you look in the DA officer in Bustamante, there was actually an officer who said, we have reason to believe that, in fact, he is, you know, a member of a gang or he is, you know, a drug dealer in Cardenas. And so here you have nothing. You don't have a shred. And in addition to ---- And your best case for the idea that we have the power to do this is what? Well, I would say under the series, like, I think this was really, obviously, it started with the Mandel test. I don't know that it didn't clear anything up, but I think that this Court under Cardenas gave us specifically that two-prong test. Okay. And is there any case that we have decided or any other court has decided that has exercised the kind of inquiry that you're asking us to do? Interestingly enough, of all the cases that have been applied to the Mandel test, there is not one that actually passed muster. And I honestly think this is the case. In addition to the Mandel, the second prong in the Mandel case, which is ---- I mean, we do have a case in our history a couple of years ago in which we did send something back under Mandel. Okay. So I missed that. I apologize. But I don't ---- Was that more in bad faith? I'd have to look at it. I'd have to pull it, but it was several years ago. Okay. In addition to not having anything in the second prong, there's a tremendous amount of bad faith here. There is the fact that all of this woman came in and out of this country as a student. She never violated her visa. She was here at some point in the early years with her husband on a student visa, never arrested, never incident, never nothing. And it wasn't until her husband refused to actively spy on the Iranian embassy that all ---- Is that in the complaint? Pardon? What you just said, is that in any of the complaints? So in the complaint, we talk about the continued harassment. We talk about the fact that her husband, they tried to do the same thing in denying her husband's visa, but he was in the United States. General references to dubious reasons, it seemed like perhaps there was a disconnect between the level of factual description of bad faith in your brief and in your amended complaint that the district court considered. So I guess we'd all like to be a Monday night quarterback, right? I will acknowledge that the pleadings could have been better. Look, you're talking to a district judge. And my worst nightmare is I make a decision and it gets up to the court of appeals and they review something that wasn't before me. Isn't it pretty fair to say what is before us is what was in the complaint? I would agree. And could they have been better? Yes. I think they could have been better pled. Was it plausibly pled? In taking, in looking at Maya v. Center, if you construe it in the most favorable light, when we put things in like the I-130, there was an interview on an I-130 for U.S.-born children, which is never done. There was unfair treatment of her husband's case, which was done at 17, and which specifically, because he had constitutional protections, was proven that they were false allegations. We talked about at 17, we also talked about the fact that she was stripped of her visa after coming in. So if you construe those facts in the most favorable light, I believe that that, at a minimum, gets us a hearing as to whether there was bad faith. We also discussed the fact that once we filed the writ, there was no fingerprints, there was no request for documents, the interview was minimals, there was no questioning, there was no nothing. And that's at 21. I think the other, one of the issues with not having some sort of facial connection in the second part of the Mandel test is the biggest fallacy in these counselor nonreviewable cases is that the counselor officer or the higher-ups or the counselor chief or the State Department is actually making these decisions, and they're not. And 90 percent of my practice is counselor review. I have an office in Africa. I'm intimately familiar with these cases. And what happens is these cases that go into admin processing go into the abyss of Washington, and they're looked at by the FBI, the CIA, and these investigative bodies, and the answer comes back, you are to dine this case under this specific statute. And the counselor office has absolutely no discretion, no nothing. And I think that becomes the problem when you have issues of bad faith or not fulfilling, especially not fulfilling the second part of the Mandel test. Counsel, why didn't you show up at the argument before the district judge? Your Honor, there was some mix-up in my office. The previous motion had been decided on the papers. My associate was under the impression that this motion was going to be decided on the papers as well. We are extremely apologetic for any disrespect to the district court, but we don't believe it foregoed. I think all issues were reserved. One thing about his decision is that it specifically said that his decision was made on the papers that were submitted. We submitted an extensive reply brief, and I don't believe that anything that I would have said at oral argument would have been any different than what was in our reply brief because we had spelled out all of the issues in this case. If we were to go with your view, what would we review? The actual counselor determination, right? I would ask that two things are reviewed. One, I would request that there is some sort of in-camera, even it be private, review that they fulfilled the second prong in the Mandel test. And what would the district judge be looking for in the in-camera review? Even something like, say, Indyne v. Carey. Like, maybe she, I mean, we obviously pledged she didn't, but something from a higher like FBI, CIA, some sort of officer that said, this woman belonged to this group. This woman worked at this agency. This woman has lunch with this person. This woman donated money to that person. Just an ounce of something, you have nothing here. And if this case doesn't But stop right there for a minute. All right. So suppose that were done, and then, you know, another piece of paper, you know, some kind of would say, you know, you know, what's comparable in FBI reports, and it turns out it says, yes, you know, I talked to so-and-so and, you know, a confidential informant who told me A, B, and C. Is that enough? Or can you challenge the sufficiency of that? Under Mandel, I would believe that that would get you through the second prong test. That's enough, isn't it? I would agree. But then, you need to turn on whether there was bad. In this particular case, you need to turn on whether there was bad faith. And how do we get at that? Do you get discovery? I would suggest that there is some sort of hearing in which you can present witnesses and evidence to demonstrate the bad faith. What witnesses would you present? So I would present her daughter, her husband. Her husband, none of these issues started. That would do what? This would go to the bad faith of the consular officer. How could they testify as to anything that the consular officer thought? Well, they could testify to the events that led up. There were no – you have to wonder why, okay? This family comes in and out of the United States. Counselor. I know. I'd really like you to answer my question. Okay. That doesn't go – if they come in and say, we didn't do the things that the FBI told the consular officer that we did. Okay. Now, are you suggesting that we get to resolve, as a matter of fact, whether they did or whether they didn't do those things? Or are we really only looking at the bad faith of the consular officer? Because if we're looking at the bad faith of the consular officer, how can you accuse the consular officer of bad faith if these folks have never met him? Okay. So at that point, I mean, I think that the consular officer, if there are solid allegations of bad faith, which questions are raised in this case. Do you have solid allegations of bad faith of the consular officer here, or just bad faith on the part of maybe the FBI who talked to the consular officer? Well, the consular officer, as we said in the complaint, never asked any questions, never did the – they never had any follow-up, they never asked for any evidence. There was literally a submission of the – But he's got a cable in the background that says the FBI strenuously objects to the admission of this – of this – of this person. Now, the consular officer taking this cable would not be operating in bad faith if he said, I'm going to deny the visa, right? I would believe – The FBI strenuously objects. I would believe that that – if Congress gave the authority to the consular officer, they didn't give it to the FBI. So I would believe that that decision would be done in bad faith if, without making their own independent investigation – The consular officer is responsible for investigating the FBI's concerns? I don't think that they're responsible for – We've just turned the rule of consular non-reviewability into a rule of consular absolute reviewability. Yeah, what you really want is to take the deposition of the consul, right? And to impose a duty on the – on the consular officer to verify the things that the FBI or the CIA is telling them. Well, isn't it – I mean, the authority has been given to the consular officer. It didn't say, FBI, you can go in overseas and you can make any decision you want and it's not reviewable. The authority was given to that consular officer, presumably because they're living in the territory, they have access to information that's going on. So if a consular officer is going to take a blanket statement that says, the FBI objects without any sort of reasoning behind that and not making their own inquiry, that's bad faith. This sounds very much like the previous case. We're just going to have a straight-up APA review and questions as to whether there's a – whether there's substantial evidence to support an agency decision. And this is completely contrary to the rule of consular non-reviewability. Now, if you want to take that position, that the rule of consular non-reviewability has no basis in law or that it's unconstitutional or something, you could do that. But that's a very different rule from what – from the framework I thought you were working within. Well, my framework that I'm working from is that there is limited review in this case. I understand. Do I think consular non-reviewability is unconstitutional, especially in these cases where it can be used to participate in racism and bad faith? Yes. But the structure under which we have to work from after Dinn and after Mandel is that here are the areas in which we can have limited review. That's the whole problem with your argument, I think. You know, I mean, you're just refusing to accept the authority of Dinn and Mandel. That's what you're doing. I mean, you're, you know, I mean, everything you argue is contrary to what, you know, what Dinn and Mandel require, I think. Well, Mandel requires that there be a facially legitimate connection to the statute cited. I know that. We have none here. But in a way, Mandel sort of defined what that is, you know, very narrowly. But if there's absolutely none, what's the point of having the Mandel test? I mean, the Mandel test set out these two points. And if you don't have one of those fulfilled, then there's no case that's ever going to get beyond Mandel. As long as the consular officer is citing one of the grounds of inadmissibility, which the consular officer did. Right. And we agree. But the second prong that was laid out in Cardenas says there needs to be a facial connection to the site, to the section that's cited. And there is nothing in here. So do you think that our court in Cardenas was simply enforcing Kerry and Mandel on the same terms that the court had done it? Or are we actually adding to it and requiring something new? I think that Dinn versus Kerry was impossible to read. And so I felt like in Cardenas, the court tried to take what the Supreme Court did and explain it and give us a test in which we could use. And so Cardenas is clearly labeled saying, okay, Mandel says, part one, in light of Dinn versus Kerry, here's part one, here's part two. And if the government gets past both of those, which I don't think they do in this case, the only other limited review we get is bad faith. Okay. Counsel, you're just about out of time. I would like you to have some time for rebuttal. So I'll give you a couple of minutes. Thank you. Good morning, Your Honors, and may it please the Court. Sarah Vong on behalf of the government. This case is exactly like Dinn. The same ground of inadmissibility was found by the consular officer, and that denial of the visa was a facially legitimate and bona fide reason. Counsel, let's assume, for purposes of my question, that Ms. Goldberg's complaint about how her clients was treated is exactly true and that there really were no good grounds for denying Ms. Shaheda a visa. This was really irritation by somebody that they wouldn't cooperate, and there's really no good reason why they can't come into the United States. They're not engaging in terrorism. They just didn't want to threaten their business by cooperating as a confidential informant spying on the Iranians. That's a pretty frustrating position. Is there no remedy for them? There is no remedy if we're not following the steps laid out in Dinn. Okay. So the FBI says we're irritated. They send a cable over to the consular officer. It doesn't say we're irritated. It says the FBI strenuously objects. Again, the motivation, we're irritated with these folks, is not reflected in that cable. There's really no bad faith on the part of the consular officer, right? Correct. But there's also no remedy for these folks? Well, the test for consular non-reviewability is, first, is the visa denied under a valid statute of inadmissibility, and second, is the inadmissibility statute stated one that specifies discrete factual predicates that the consular officer must find to exist before denying the visa. Plaintiff would have the second step include a facial connection to a fact in the record, but if you look at the language of Cardenas, there's an or in that second step. So it's either a statute that specifies discrete factual predicates or a fact in the record. And in DIN, in fact, the government did not. And the fact in the record would be sufficient if it said the FBI strenuously objects. Correct. As has happened in any other. Even if there's, even if the only basis for the FBI objecting is that they're really, really irritated. Yes, Your Honor. Because the bad, once we get past the bona fide and facially legitimate test. So there's no bad faith on the part of the consular officer. There might be bad faith on behalf of a law enforcement agency, but there's no remedy for that. Is that what you're telling us? The consular officer is relying on the information given to him or her by other agencies. For example, in Bustamante's, they're relying on the DEA report saying that there had been drug trafficking allegations. And in Cardenas, they were relying on, you know, a police report that says Mr. Cardenas was in the car with someone who's believed to be a gang affiliate. In each of those, it's coming from a separate agency. What we have in the record from those cases provides no further factual basis. So in this case, similar to both of those, yes, the consular officer would rely upon the FBI statement that it has reason to believe, or it believes or knows that this person has engaged in terrorist conduct or activity. But before we even get to that bad faith, the court would have to find that there was no facially legitimate and bona fide reason, which in this case, it squarely falls within DIN. Although in DIN, the complaint alleged that plaintiff's husband had worked for the Taliban, nothing in the consular officer's decision, you know, found that any activity with the Taliban was the reason for the denial. That was just what Justice Kennedy himself found. Additionally, in DIN, the Supreme Court found that 1182A3B, which is, again, the statute of inadmissibility found here, is one of these statutes that specifies criteria for determining terrorism-related inadmissibility. And that's how we get through the second prong of, as laid out in Cardenas, which builds off DIN, that a bona fide decision is one that cites a statute with specific factual criteria. Ms. Shaheed's husband has been admitted to the United States, is that correct? Yes, Your Honor. Okay. And he presumably is the one who refused to cooperate with the FBI on this. Presumably. That was not alleged in the complaint. It was followed up in the motion. I mean, has the government stopped here from, because they've admitted the husband, who presumably was the principal here, and now refusing the wife? No, Your Honor. I mean, the husband didn't petition for Ms. Shaheed to come across. No, I'm not interested in the petition so much. I'm just wondering whether, since we've admitted one half of the married couple, and we've admitted the half that presumably had the principal contact with the FBI. I think if you look at the documents attached with the original complaint, the NTA was submitted with the complaint. It shows that Mr. Shaheed was not alleged to be removable on the basis of terrorism-related grounds. Was he inadmissible on the grounds of terrorism? No, Your Honor. I think he was inadmissible on the grounds of terrorism. But she is? Yes, Your Honor. Okay. Is there anything in the record that explains the difference between her status and his status? No, Your Honor. I have no record. I have the documents that the plaintiff has submitted with the original complaint. But there isn't anything there that would suggest that there's any difference between the way that the two of them conducted themselves with respect to the FBI. So there's nothing in the record that would explain why he was treated one way and why she was treated another. No, Your Honor. Not that I have seen. These are allegations that come from the plaintiff, so just based upon the plaintiff's own. Because the government doesn't have any other information that it has come forward with or has been required to come forward with at this point? Not at this point, Your Honor. At this point, we rely upon the consular officer's determination on Ms. Shaheed's visa denial in Lebanon and looking solely at that decision itself. As far as Mr. Shaheed, no, there's nothing else that I can tell you. He is not a plaintiff in this case, and we only have the documents submitted by plaintiff with the original complaint. On the question of bad faith, why isn't a fair reading of the plaintiff's amended complaint here, even if there aren't affirmative specific allegations of bad faith behind the scenes, which a plaintiff in this position could never get, why isn't a fair reading that on this set of allegations, no person could have denied this if somebody in this plaintiff's position is never going to be able to go behind the scenes in a complaint and have access to what the consular officer was actually thinking or behind the scenes communications. But here, hasn't the plaintiff done everything that she could in alleging that this person came in and out, and you could imagine the next plaintiff, this person was given the Citizen of the Year Award by the local FBI. So aren't these sorts of allegations enough for bad faith? Not in this case. I mean, if you look at the amended complaint, the language says, subject to unfair harassment and delays, continued unreasonable harassment of plaintiffs. There's nothing that falls within the Iqbal and Twombly line of cases that provides a sufficient factual matter that if the court was to accept it as true, that would constitute a claim to show that there had been bad faith on its face. There needs to be more. I can't tell the court where that more is, but there needs to be more to show bad faith on the part of that consular officer, be it something that the officer himself or herself says at the interview or on the basis of the denial letter. And in this case, we just don't have that. Plaintiff does try to cure the complaint in the response to our motion to dismiss by providing further allegations. But even if we accept those as true, there's still not enough because it's still very broad allegations that somebody at the FBI, somebody at CBP stopped Mr. Jihadi when he came across and then at some point the FBI became involved and then that information was transmitted to the consular officer in Lebanon and was relied upon. There's just not enough there to show that the consular officer acted in bad faith in denying this visa. Finally, Your Honors, if you'd like to get into the constitutionally protected interest alleged here or the court can follow Dinh in which the constitutional interest is assumed and we jump right to consular non-reviewability. We argue that there is no constitutionally protected interest between an adult daughter and her mother. The cases that Plaintiff has cited come out of 1983 cases in this circuit in which the state has severed completely the parent-child relationship whereas here that relationship has not been severed. It's not void. It's not while they cannot live together in the United States, the right to companionship has not been completely denied. And so Plaintiff and her mother can live together in any other area of the world that would have them live there. But if there are no further questions. It doesn't appear so. Okay. Thank you, Your Honors. Thank you, Ms. Long. All right, Ms. Goldberg, I'll give you a couple of minutes. So I think there is a big distinction between her and her husband. Her husband had the benefit of being in the United States. And when he refused to actively spy, his I-45 was denied. And then when he was placed in removal proceedings, there were allegations of terrorism. But the fact that he was here and we were able to go into district court and we were able to do discovery and he had a due process right, made it so he could actually adequately refute those allegations, and he did, because he got his green card. And there's no way if he had any participation in terrorist activity, he would have been given that green card. When they didn't succeed on that, they went after his wife, who unfortunately was overseas. So when you say there's no difference between husband and wife, I disagree. The difference is one is getting review and the other is not. And it's the same allegation that the allegations of the husband would have been stronger because at least he worked in Lebanon, he had interaction with other people. This is a woman who was specifically a homemaker. But that is a consequence of the way that we've applied the due process clause. I understand, but I also think it goes to the idea of how much bad faith there is in this case. To admit one person and not the other. The other thing I quickly wanted to touch on is that this court has a lengthy history of finding at least a protected interest from both parent to child and child to parent. It was in Strandberg, Lee, Johnson, and Smith found that it logically went the other way. So we're not saying there's this absolute right for these — for mother and child to live together. What we're saying is there is a — there's a liberty interest in which she is allowed to have some sort of due process, which was not done in this case. Okay. Thank you very much. I thank counsel for the argument on the case. It was very helpful. And with that, Shahad v. Carey is submitted. We have completed the oral argument calendar for the day, and the Court stands adjourned.
judges: Tashima, Bybee, Leitman